# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

FIRSTBANK OF PUERTO RICO, *et al.*,

Plaintiffs,

v.

ROSTA FAMILY LIMITED PARTNERSHIP, *et al.*,

Defendants.

CIVIL NO. 16-1816 (ADC)
(Cons 15-1683, 15-1684, 15-1685)

## OMNIBUS REPORT AND RECOMMENDATION

### I.    INTRODUCTION

The Gordian knot has been cut. Or so it seems. The above-captioned consolidated cases have been pending before Court for quite some time given the complicated procedural stance they have carried since the Federal Deposit Insurance Company ("FDIC")—Doral Bank's receiver—removed them to federal court.[1] All but one of these four cases originated in state courts, which in turn were consolidated with several other actions. Docket No. 502. The main disputes, as will be summarized below, revolve around the alleged impossibility of titleholders to record the titles to their apartments. But since then, a pivotal shift took place: the Puerto Rico Registrar of Property allowed the

---

[1]    The consolidates cases are: *Horacio Augusto Montes-Gilormini, et al. v. Federal Deposit Insurance Corp., et al.*, Civ. No. 15-1683 (ADC) ("Civ. No. 15-1683"); *Federal Deposit Insurance Corp., et al. v. Costa Real, S.E., et al.*, Civ. No. 15-1684 (ADC) ("Civ. No. 15-1684"); *Horacio Augusto Montes-Gilormini, et al., v. Federal Deposit Insurance Corp., et al.*, Civ. No. 15-1685 (ADC) ("Civ. No. 15-1685"); and *First Bank of Puerto Rico, et al. v. Rosta Family Limited Partnership et al.*, Civ. No. 16-1816 (ADC) ("Civ. No. 16-1816"). They were reassigned to the presiding District Judge on April 5, 2023. Docket No. 486.

recordation of the titles and mortgages purportedly based on a new deed that cured the deficiencies contained in the original deed. Pending before the Court are a motion for judgment on the pleadings filed by Banco Popular de Puerto Rico, Doral Financing Corporation, Doral Mortgage LLC, First Bank of Puerto Rico (Docket No. 551); a motion to dismiss for lack of subject-matter jurisdiction filed by Oriental Bank, Docket No. 552; three motions to dismiss for lack of jurisdiction filed by the FDIC, based on mootness grounds, Docket No. 557; and the other two on failure to administratively exhaust claims. Docket Nos. 560, 561. The presiding District Judge referred these motions to the undersigned for report and recommendation. Docket No. 563. A status conference was recently held on February 10, 2026, at the request of Banco Popular de Puerto Rico. Docket No. 608.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The events that lead to where we are today date back to 2008. But first, let's go to the year 2005.[2] In 2005, Costa Real S.E., a real estate development company, partially completed the construction of a 25-acre condominium project in Río Grande, Puerto Rico, known as "Costa Real." Docket No. 557 at p.2; Docket No. 133-3 ¶¶ 2-3 (Consolidated Plaintiffs' Amended Complaint). Three out of four condominiums were built: Costa Dorada, Costa Dorada II, and Costa Azul. Docket No. 133-3 ¶ 1. The lot where the condominiums were built was segregated into eleven (11) lots, identified as Lot A, Lot B, Lot C, Lot D, Lot E, Lot F, Lot G, Remanent 1, Remanent 2, Remanent 3, and Remanent

---

[2]    I summarize the relevant factual background accepting as true the well-pleaded allegations in the complaint and drawing all reasonable inferences in Plaintiffs' favor. *See Doe v. City of Boston*, 145 F.4th 142, 146 (1st Cir. 2025) (citations omitted). But because this Court has already found that the facts in the case are undisputed, *see* Docket No. 141, and the parties agree to the facts as evidenced at the status hearing held on February 10, 2026, I recount the facts drawing from the factual averments in Plaintiffs' amended complaint, previous holdings from the Court, and the detailed, year-by-year recollection in FDIC's motions.

4. Docket No. 133-3 ¶ 5. Lot F was constituted as a public road, serving the four condominiums. *Id.* ¶¶ 6, 23, 25, 29. The public road (Lot F) gave access to the other ten (10) lots in the Costa Real project and was identified as a general common element. *Id.* ¶¶ 29-34.

By 2006, multiple units had been sold to individuals or entities, many of whom obtained mortgage loans from various lenders and banks throughout the island. Docket No. 557 at pp. 2-3; Docket No. 133-3 ¶¶ 16-18. Once most of the units in Costa Real were sold, developer Costa Real S.E. attempted to transfer via Deed No. 72 solely to the homeowner's association for Costa Dorada I ("HOA") ownership of, and responsibility of, several common areas located within the Costa Real complex that were to be utilized by all residents. *Id.* Deed No. 72 was executed on December 21, 2001, establishing easements of right of way, use, and enjoyment over multiple property lots, and presented to the Property Registry on January 25, 2002. Docket Nos. 133-11, 133-12, 141. The HOA, however, refused to accept the transfer of Deed No. 72. *Id.* As a result, on July 30, 2007, developer Costa Real S.E. sued the HOA in state court to force the HOA to accept the transfer of ownership of the common areas and to otherwise comply with Deed No. 72. *See* state civil case N3CI200700551; *see also* Docket Nos. 134-1, 141.

On August 6, 2007, the HOA filed a counterclaim in that action seeking a judgment declaring null and void Deed No. 72. Docket No. 134-4. No lenders that held mortgages against individual condominium units located within the Costa Real complex were named in the counterclaim or included as parties in interest. Docket No. 141. More on this later as these parties in interest were subsequently found to be indispensable. After the Court of First Instance granted an injunction and declared that Deed No. 72 was valid, the Puerto Rico Court of Appeals issued an order on April 23, 2008, reversing the Court of

First Instance and declaring Deed No. 72 null and void. *Id.*; Docket Nos. 133-3 ¶ 35, 134-8, 134-12. Lenders, such as Doral Bank, Banco Popular, and other financial institutions with rights pending before the Property Registry, were notified of the decision of the Court of Appeals. As a result of the nullification of Deed No. 72, the Registrar of Property cancelled the entries made, and no other document could be registered. Docket No. 133-3 ¶¶ 35-37.

After the 2008 judgement invalidating Deed No. 72, in November 2012 the president of the HOA, Horacio Gilormini, his wife Ana Valores Molini, and 40 other homeowners in Costa Dorada I filed a declaratory judgment action in state court (civil case N3CI201200773) against their respective lenders asserting that because Deed No. 72 was null and void, the mortgage and sale deeds pertaining to their individual condo units could not be registered and thus the homeowners would be impeded from ever obtaining title to their units. Docket Nos. 133-3 ¶ 63, 141. This second lawsuit was consolidated with the action commenced by developer Costa Real S.E. On February 3, 2015, the Registrar of Property declined to record deeds of sale and mortgage because they lacked the right of way, use and enjoyment, after Deed No. 72 was declared null and void. *See* Docket Nos. 134-16, 141. Multiple deeds of mortgage that stem from Deed No. 72, and were presented by several financial institutions, were unable to be properly registered in the Property Registry. Docket Nos. 141, 502.

On October 6, 2014, Doral Bank and some of its affiliates filed a new lawsuit against the HOA seeking to vacate the 2008 Judgment invalidating Deed No. 72 (state civil case N3CI201400650). In essence, Doral Bank alleged that it was improper for the HOA to seek invalidation of Deed No. 72 without naming them in, and serving them with, the original lawsuit.

While the state cases were being litigated, some homeowners stopped paying their mortgages based on the invalidity of Deed No. 72. Docket Nos. 502, 557 at p. 6. As a result, various lenders initiated nearly twenty-five (25) foreclosure actions in state courts. *Id.* Some defendant homeowners filed counterclaims against their respective lenders based on their inability to record their deeds and obtain title to their condominium units. In late 2014, the state courts consolidated the second lawsuit (claims asserted by the homeowners against their lenders seeking monetary damages and to void their mortgages), the third lawsuit (claims set forth by Doral Bank and its affiliates against the HOA seeking to vacate the 2008 judgment regarding Deed No. 72), and the 25 foreclosure actions (along with the counterclaims) into one action—state civil case N3CI20120073.

On February 27, 2015, the Office of the Commissioner of Financial Institutions of Puerto Rico intervened and closed Doral Bank; the FDIC was appointed Doral Bank's receiver. Docket No. 502. It was then that the consolidated state case was removed by the FDIC to this Court as Civil Case No. 15-1683, as well as an ancillary appellate case that stemmed from it (civil cases nos. 15-1684 and 15-1685). A year later, FirstBank filed in this Court an independent collection of monies and foreclosure action against the Rosta Family Limited Partnership, Jerome Reisman, and Nivea Ribas. This became Case No. 16-1816, and by order of the Court, cases nos. 15-1683, 15-1684, and 15-1685 were consolidated with it. *See* 16-1816, Docket No. 27.[3]

On September 14, 2017, then presiding District Judge Daniel R. Domínguez issued an opinion and order granting summary judgment in favor of Doral Bank and other financial institutions declaring the annulment of the 2008 Judgment which I turn had

---

[3] Since then, FirstBank of Puerto Rico, Jerome Reisman, Nivea Ribas, and the Rosta Family Limited Partnership settled and judgment dismissing the case with prejudice was entered on October 30, 2025. *See* Docket Nos. 596, 598.

declared null and void Deed No. 72 for failure to join indispensable parties, i.e., the financial institutions which are creditors with loans secured by mortgages. Docket No. 141.

The instant case had a turning point when on November 8, 2019, CDJR Development, acquirer of developer Costa Real, executed Deed No. 89, a replacement for Deed No. 72, and the same was duly recorded at the Property Registry. All related pending instruments, including all of the Costa Real sale deeds and mortgage deeds, were then recorded. *See* Docket Nos. 444 at p.2, 494 ¶ 8, 511 at p. 2; 557. That is, the deeds and mortgages of the homeowners that could not be recorded before were now recorded before the Property Registry.

The presiding District Judge issued a memorandum order on September 18, 2023, dismissing as moot case nos. 15-1684 (related to the 2008 judgment and the nullity of Deed No.72) and 15-1685 (related to an attorney's withdrawal as legal representation). As to case no. 15-1683, the Court noted that the main dispute revolves "around the alleged impossibility of the plaintiff titleholders to record their title to their apartments, the alleged impossibility of the banks to record their mortgages encumbering the apartments, and the banks' individual foreclosure actions against the titleholders, which in turn depend on the recordation of their mortgages." Docket No. 502 at p. 7. The Court acknowledged that the 2017 Opinion & Order issued by the then-presiding District Judge did not rule on the merits of the dispute. *Id.* Notably, the Court recognized that "a fundamental condition has changed, and that is that [the] Registrar of Property has allowed the recordation of the titles and mortgages purportedly based on the execution of a new deed that cures the deficiencies of the old one." *Id.* at p. 8. The presiding District Judge was categorical in stating that said event could possibly render moot much of the parties' claims in case no. 15-1683. *Id.* The parties were then ordered to inform the Court

6

the effect of the recordation in the relief requested in case no. 15-1683. They complied. *See* docket nos. 510-516.

It should be noted that at the status conference held on February 10, 2026, Consolidated Plaintiffs[4] acknowledged on the record that the basis of the lawsuit was the impossibility of recording their titles given the annulment of Deed No. 72 but that since then, because the titles have been recorded, there is no longer a controversy before the Court. Counsels, as officers of the court, candidly represented that their clients no longer had viable claims. Consolidated Plaintiffs did not express an intent to continue pursuing the claims in the amended complaint concerning the constitutionality of the Condominium Act, resolution of the contract of sales, mortgage guarantees, and/or financing, nor the return of the amounts paid. Moreover, Consolidated Plaintiffs do not seek damages. *See* Docket No. 133-3 at pp. 28-29. Additionally, the parties informed the Court which ones were engaging in loss mitigation, which had exhausted negotiations, and which had not engaged in any sort of settlement efforts.[5]

---

[4] The Consolidated Plaintiffs are: Ramón Rafael Hamilton Márquez, Iris Josefa Valentín Nieves, Ángel Dávila Franco, Emergency Medical Services CSP, José Colón Grau, Ada San Antonio, the Rosta Family Limited Partnership, Jerome Reisman, Nivea Ribas, Dr. Goar Blanco, Virginia Fernández Riollán, Reinaldo García, Horacio Augusto Montes Gilormini, Ana Valdres Molini, Delores Elizabeth Macksoud, Héctor Piñero Morales, Brunilda-Arauz Nieves, Carlos Rodríguez Acosta, José A. Negroni, Lorraine Hernández Cabán, Joseph Estrella, María Ramírez Marrero, Rafael Blanco, Mabel Rovira Mllán, Arnaldo Pacheco, Ana Yolanda Díaz Rivera, Manuel V. Circuns, Brenda Irvis-Silen, Reinaldo García Cruz, Dorias Esther Ríos Zamot, Merrelle Reddings, Jaime Alonso, María Ribas, Jose Armando Romero Cruz and Carmen Milagros Gómez Arzuaga. *See* Docket Nos. 547 and 560 n.1.

[5] Attorney for Consolidated Plaintiffs José A. Negroni and Lorraine Hernández Cabán informed that they recently submitted documents to Franklin Credit and are waiting on further paperwork. Attorney for Consolidated Plaintiff Delores Elizabeth Macksound informed that she settled and is waiting for judgment to be entered. Attorney for Consolidated Plaintiffs Horacio Augusto Montes Gilormini, Ana Valdres Molini, Joseph Estrella, María Ramírez Marrero, Jaime Alonso, María Ribas, and Arnaldo Pacheco informed having no information or feedback as to said Consolidated Plaintiffs. Attorney for Consolidated Plaintiffs Reinaldo García, Dorias Esther Ríos Zamot, Rafael Blanco, Virginia Fernández Riollán, Carmen Milagros Gómez Arzuaga, Manuel V. Circuns, Brenda Irvis-Silen, Carlos Rodríguez Acosta, and Jose Armando Romero Cruz informed that said Consolidated Plaintiffs had no viable claims and/or they will not pursue further negotiations. Consolidated Plaintiff Emergency Medical Services CSP was made a counteroffer, but no additional offer was made. Counsel for Banco Popular informed that Consolidated Plaintiffs Rafael Blanco Boschetti and Héctor Piñero Morales finalized negotiations and settled and will file the paperwork with the

### III.    APPLICABLE LAW AND DISCUSSION

**A.    Motion for Judgment on the Pleadings**

Rule 12(c) of the Federal Rules of Civil Procedure allows for a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P 12(c). A motion for judgment on the pleadings is much like a motion to dismiss pursuant to Rule 12(b)(6). *Kando v. R.I. State Bd. Of Elections*, 880 F.3d 53, 58 (1st Cir. 2018). Thus, a court ruling on a Rule 12(c) motion must also "'accept all of the non-movant's well-pleaded factual averments as true and draw all reasonable inferences in his or her favor.'" *Rivera-Gómez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) (citations omitted). "Threadbare recitals of a cause of action's elements, supported by mere conclusory statements" do not meet the plausibility threshold that obliges the Court to take them as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Judgment on the pleadings under Rule 12(c) cannot be entered unless it appears beyond a doubt that the nonmoving party can prove no set of facts in support of her claim that would entitle him or her to relief. *Ballester Hermanos, Inc. v. Brugal & Cia. C. por A.*, 2025 WL 509345, at *1 (D.P.R. Feb. 14, 2025).

---

Court accordingly. Counsel for Consolidated Plaintiff Angel Dávila Franco informed that there are no ongoing negotiations and does not oppose to the case being remanded to state court. Counsel for Consolidated Plaintiff José Colón Grau informed that ongoing negotiations continue with Banco Popular. No information was provided as to any other Consolidated Plaintiff.

As to Non-Consolidated Plaintiffs Sean Lynch-González and Silvia Flores-Pabón, the Court was informed that they completed the loss mitigation process, but the offer was deemed unacceptable. As to Non-Consolidated Plaintiff Karl Walter Nickels-Mitchell, counsel informed that he had no viable claims and/or will not pursue further negotiations. No information was provided as to any other Non-Consolidated Plaintiff.

8

**B.    Motion to Dismiss – Fed. R. Civ. P. 12(b)(1)**

A motion to dismiss on mootness grounds, in turn, is properly brought under Fed. R. Civ. P. 12(b)(1) because it constitutes a challenge to the court's subject-matter jurisdiction. *Am. C.L. Union of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) ("Mootness is a ground which should ordinarily be decided in advance of any determination on the merits."). "Motions brought under Fed. R. Civ. P. 12(b)(1) are subject to the same standard of review as Fed. R. Civ. P. 12(b)(6) motions." *Calderón v. Internal Medicine Canóvanas Group Corp.*, 2025 WL 2615051, at * 2 (D.P.R. Sept. 10, 2025). As with a 12(b)(6) motion to dismiss, when reviewing a Rule 12(b)(1) motion to dismiss, courts "construe the [c]omplaint liberally and treat all well-pleaded facts as true, according to the plaintiff the benefit of all reasonable inferences." *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015) (cleaned up). The burden of establishing mootness rests with the party invoking the doctrine. *See Am. C.L. Union of Mass.*, 705 F.3d at 52. In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1), courts may consider all pleadings submitted by the parties. *Calderón*, 2025 WL 2615051, at *2. And other materials "to resolve factual disputes concerning the existence of jurisdiction." *Id.* (quoting *Fernández-Molinary v. Industrias la Famosa, Inc.*, 203 F. Supp. 2d 111, 114-15 (D.P.R. 2002)) (cleaned up).

**C.    Analysis**

The question before the Court is whether the recordation of Consolidated Plaintiffs' titles suffices to render moot their claims, and thereby strip this Court of subject-matter jurisdiction. Movants Oriental Bank and the FDIC argue in their respective motions that the subsequent recordation of the condominium's master deeds, the Consolidated Plaintiffs' titles, and the bank's mortgages moot Consolidated Plaintiffs' request because

their pleadings have been adjudicated in such a way as to deprive them from their principal basis for relief. *See* Docket Nos. 552, 557. FirstBank, Banco Popular, and Doral Bank's successor in interest also request dismissal of the amended complaint but they ask the court to enter a judgment on the pleadings. Docket No. 551.

Consolidated Plaintiffs do not challenge any of the requests for dismissal. There is only one opposition as it pertains to the FDIC's motion to dismiss on mootness grounds by DLJ Capital, Inc. and Banco Popular. *See* Docket No. 588. Essentially, DLJ Capital and Banco Popular sustain that a dismissal on mootness grounds would "eviscerate their ability to obtain [] judicial clarity, leaving fundamental questions about lien validity unresolved." *Id.* at p. 2. As in their motion for judgment in the pleadings, they urge the Court to make a determination on the merits upholding the validity and enforceability of the mortgages to secure their security interests. *Id.* at pp. 4-5. The FDIC replies that what DLJ Capital and Banco Popular seek is an advisory opinion, as implied in their opposition, which lies outside the confines of this Court's jurisdiction. Docket No. 601. And emphasize that none of the Consolidated Plaintiffs opposed its request for dismissal on mootness grounds.

### 1.    *Mootness*

Federal Courts are courts of limited jurisdiction. Article III of the Constitution limits "the judicial power" to "Cases" and "Controversies." U.S. Const. art III, §2, cl. 1. To be justiciable, a case must present "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. of Hartford, Conn. V. Haworth*, 300 U.S. 227, 239-41 (1937). It is blackletter law that federal courts are generally barred from issuing advisory opinions where a live ripe

controversy does not exist. *Carolina Catering Corp. v. United States Dep't of Homeland Sec.*, 2024 WL 3292768, at \*3 (D.P.R. July 2, 2024).

Mootness refers to when the issues in a case "are no longer 'live' or the parties lack a legally cognizable interest in the outcome, such that it is impossible for the court to grant any effectual relief whatever to a prevailing party." *In re Ruiz*, 83 F.4th 68, 73 (1st Cir. 2023) (quoting *Harris v. Univ. of Mass. Lowell*, 43 F.4th 187, 191-92 (1st Cir. 2022)) (cleaned up). The mootness doctrine "addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit." *Betancourt-Colon v. Plaza Las Americas, Inc.*, 2024 WL 866271, at \*2 (D.P.R. Feb. 29, 2024) (quoting *Moore v. Harper*, 600 U.S. 1, 14 (2023)). It is a corollary of the "case" and "controversy" jurisdictional requirement contained in Article III of the Constitution of the United States. *Id.* The burden of establishing mootness lies with the party asserting its application. *See Am. C.L. Union of Massachusetts v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) (citing *Conservation Law Found. v. Evans*, 360 F.3d 21, 24 (1st Cir. 2004)).

The FDIC and Oriental Bank stress that Consolidated Plaintiffs' amended complaint lacks a concrete dispute thus undermining this Court's jurisdiction over the action. Dockets Nos. 552, 557. Consolidate Plaintiffs do not challenge this contention. And First Bank and Banco Popular have only briefed the merits of the action. Docket No. 551. However, before turning to the merits, the Court must determine as a threshold matter whether it has jurisdiction. *Moore*, 600 U.S. at 1. Consolidated Plaintiffs' claims were premised on the nullity of Deed No. 72 and the impossibility of securing recordation of their titles and mortgages deeds before the Registrar of Property. *See* Docket No. 133-3. Said claims became moot once the Registrar of Property recorded Deed No. 89 of

November 2, 2019, executed by CDJR Development, LLC (acquirer of the Costa Real development), which was a replacement for Deed No. 72. As a result, all the pending instruments regarding titles and mortgage deeds were duly recorded, including those of the Consolidated Plaintiffs. As a matter of fact, Consolidated Plaintiffs have acknowledged in several instances that all titles of property and mortgages deeds have been duly recorded. *See* Docket Nos. 444 at p.2, 494 ¶ 8, 511 at p. 2. What's more, Consolidated Plaintiffs do not oppose dismissal based on mootness grounds. As recently as two weeks ago, at the status conference held on February 10, 2026, Consolidated Plaintiffs once again reiterated that the titles and mortgage deeds have been recorded and there is nothing for the Court to entertain.[6] As such, as it relates to the Consolidated Plaintiffs, there is no ongoing controversy for the Court to decide. "'Since the controversy at issue is not live … [Consolidated Plaintiffs, First Bank, and Banco Popular] must rely on an exception to the mootness doctrine' to save [the case] from dismissal." *Harris*, 43 F.4th at 194 (internal citations omitted). None argue that the action falls within one of the exceptions to the mootness doctrine. *United States v. Zaninno*, 895 F.2d 1, 17 (1st Cir. 1990).

DLJ Capital, Inc., FirstBank, Banco Popular, and Doral Bank's successors in interest urge the Court to entertain the merits of the case because it can be relevant in the

---

[6] At some point during the years-long litigation, in an attempt to keep the ball rolling, Consolidated Plaintiffs argued that, although the titles and mortgage deeds had been recorded, the legality of said recordings subsequent to Deed No. 89, which replaced Deed No. 72, had to be evaluated by the Court. But the amended complaint contained no allegations as to Deed No. 89. Docket No. 511. Additionally, it was admitted at the status hearing held on February 10, 2026, that Consolidated Plaintiffs have no interest in pursuing any lingering claim, including those raised in the amended complaint related to the legality of the Condominium Act, resolution of the contract of sales, mortgage guarantees, and/or financing, the return of the amounts paid by Consolidated Plaintiffs. Damages are not sought. *See Harris*, 43 F.4th at 192-93 ("[a]lthough 'a claim for damages will keep a case from becoming moot where equitable relief no longer forms the basis of a live controversy,' the appellants had not made any specific request for damages.") (quoting *Thomas R.W. v. Mass. Dep't of Educ.*, 130 F.3d 477, 480 (1st Cir. 1997)) (cleaned up).

near future. *See* Docket No. 588 ("[d]ismissing on mootness grounds would deprive lenders of a definitive ruling and leave fundamental legal questions unresolved, undermining the certainty and stability of real estate transactions going forward;" "dismissal based on mootness would unjustly deprive the lenders of the opportunity to address these fundamental legal questions, leaving unresolved doubts that threaten the integrity of their property rights and the predictability of future real estate transactions involving mortgage liens;" "Dismissal for mootness terminates the case without resolving the underlying legal disputes, leaving the validity of the contested deeds, and thus critical precedent, unsettled. By contrast, a merits adjudication produces a final, binding resolution that clarifies the legal framework governing similar instruments and disputes."). Consolidated Plaintiffs have expressed no interest or desire to go forward with any lingering claim and, most important, because the action is moot in light of the recordation of the titles and mortgage deeds, the Court need not reach the merits. *In re Ruiz*, 83 F.4th at 74; *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 48 (1997). And I will not go against the prohibition of issuing an advisory opinion on issues that are directly governed by Puerto Rico law, specifically real property rights and Puerto Rico Horizontal Property laws.[7] *Carolina Catering Corp.*, 2024 WL 3292768, at *3; *Aetna*, 300 U.S. at 241; *ACLU of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 52-53 (1st Cir. 2013).

What would remain pending are the collection claims and foreclosure actions against unpaid mortgages, which are not part of the instant action. Because the Court has no longer subject-matter jurisdiction over this case (15-1683), I recommend that any

---

[7] The Court, in two previous instances, has stated its position to abstain from entertaining issues in this case related to the interpretation of Puerto Rico law, regarding the constitutionality and validity of certain laws, as well as the validity of certain Puerto Rico laws relating to property rights, the Puerto Rico Horizontal Property law, and including but not limited to the recording of the local deeds in the Property Registry. *See* Docket Nos. 271, 502 at pp. 8-9.

foreclosure action continue in state courts, where lenders initiated the same a few years ago. *See Federal Deposit Ins. Co. v. Laborde-Corretjer*, 2019 WL 4187445, at \*3 (D.P.R. Sept. 3, 2019); s*ee also* Docket No. 511 (Consolidated Plaintiffs proposed, while discussing the validity of the recordations, remanding to state courts).

### 2.    *FDIC's Alternative Ground for Dismissal: Failure to Exhaust Administrative Claims*

While I need not go further, I briefly address the FDIC's alternative ground for dismissal at Docket Nos. 560 (requesting dismissal against Consolidated Plaintiffs) and 561 (requesting dismissal against Non-Consolidated Plaintiffs).[8] In sum, the FDIC argues that none of the Costa Real homeowners timely or properly complied with Title 12's mandatory administrative claims process and, as such, this Court lacks jurisdiction to hear their claims against the FDIC (Doral Bank's receiver). Docket Nos. 560, 561, 599. Not one of the Consolidated or Non-Consolidated Plaintiffs challenged any of the two motions for dismissal. I thus deem them unopposed.

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") sets forth a statutory claims process "designed to create an efficient administrative protocol for processing claims against failed banks." *Marquis v. FDIC*, 965 F.2d 1148, 1154 (1st Cir. 1992). Pursuant to the review process, the FDIC is required "to publish notice that the failed institution's creditors must file claims with the FDIC by a specified date, which must be at least ninety days after publication of the notice." *Acosta-Ramírez v. Banco Popular de Puerto Rico*, 712 F.3d 14, 19 (1st Cir. 2013) (citing 12 U.S.C. § 1821(d)(3)(B)(i)); *FDIC v. Kane*, 148 F.3d 36, 38 (1st Cir. 1998).

---

[8]    The FDIC has identified approximately 91 Costa Real homeowners (individuals or entities) as Non-Consolidated Plaintiffs. The Non-Consolidated Plaintiffs have asserted or may hold claims against the FDIC. *See* Docket No. 561 at n.1 (list of names of Non-Consolidated Plaintiffs).

If a timely claim is filed, the FDIC must decide whether to approve or disallow the claim within 180 days. *Acosta-Ramírez*, 712 F.3d at 19 (citing § 1821(d)(5)(A)(i)); *Simon v. FDIC*, 48 F. 3d 53, 56 (1st Cir. 1995). "Claimants then have sixty days from the date of disallowance or from the expiration of the 180–day administrative decision deadline to seek judicial review in an appropriate federal district court (or to seek administrative review)." *Acosta-Ramírez*, 712 F.3d at 19 (citing 12 U.S.C. § 1821(d)(6)(A)). Once the sixty-day period expires, "such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim." *Id*. at n.8 (citing 12 U.S.C. § 1821(d)(6)(B)). "[T]he failure … to comply with the sixty-day requirement to seek judicial review of the denial of [ ] administrative claims also deprives courts of jurisdiction." *Acosta-Ramírez*, 712 F.3d at 20. Consequently, "[c]ompliance with and exhaustion of the administrative procedure is mandatory." *FDIC v. Sánchez-Castro*, 2016 WL 4257336, at *2 (D.P.R. 2016) (citing *Marquis*, 965 F.2d at 1151). If a claimant fails to comply with the review process, courts will be stripped of subject-matter jurisdiction to hear the case. *Laborde-Corretjer*, 2019 WL 4187445, at *3.

On February 27, 2015, Doral Bank was closed by the Commissioner of Financial Institutions of Puerto Rico, which appointed the FDIC as Doral Bank's receiver. Docket No. 560. The FDIC published notice to creditors of Doral Bank that the latter had failed, and the FDIC was appointed its receiver on its website, in local newspapers, and court filings (notices of removal). *Id*. It also mailed letters to "most or all of the [h]omeowners in this litigation," either directly or through their respective attorneys. All notices informed that Doral Bank had closed and that any claims against Doral Bank had to be filed with the FDIC by a deadline. It also provided the instructions on how to submit

administrative claims to the FDIC and emphasized that failure to file the claim on or before the given deadline was to result in disallowance, which in turn was final. *Id.*

As to the thirty-four Consolidated Plaintiffs, only two (i.e., Reinaldo Garcia-Cruz and his wife, Doris Rios-Zamot) timely submitted an administrative claim. *Id.* The rest either failed to submit a claim or submitted a claim after the deadline, thus being untimely. As to the two homeowners who timely submitted their administrative claim, the FDIC rendered a determination to disallow the claims on the merits on December 4, 2015. The two claimants had sixty (60) days after the disallowance notice to seek judicial review (until February 2, 2016), but they did not. As to the Non-Consolidated Plaintiffs, only three claims were timely submitted.[9] Docket No. 561. The rest of the nearly one-hundred Non-Consolidated Plaintiffs either failed to submit a claim or submitted untimely claims. *Id.* As to the timely submitted administrative claims, the FDIC disallowed them on the merits, and on August 17, 2015, November 18, 2015, and November 24, 2015, respectively, mailed written notice of said disallowance. From that moment, the claimants had sixty (60) days to initiate a lawsuit. The claimants that timely filed their administrative claims, however, took no further action. *Id.* The homeowners, collectively or individually, do not oppose the FDIC's dismissal request for failure to exhaust administrative proceedings.

Because the Consolidated and Non-Consolidated Plaintiffs either did not submit an administrative claim to the FDIC, submitted a claim after the deadline, or timely submitted a claim but then failed to take the statutorily required action, i.e., seek judicial review within sixty (60) days of the denial of the administrative claims, the Court does not have jurisdiction to hear any claims asserted against the FDIC. I thus recommend that

---

[9]    The three claims were filed by the following individuals or entities: Fernando Olivero Barreto, Elsa Lorn Cruz, Eli Samuel Rojas Davis, Luis Carlos Rojas Ruiz, Nelky Esther González Pérez, Estate of Josefina Ruiz Cortes, Angelo Emilio Román-Santiago, and Carme Aponte-Berrios. *See* Docket No. 561 n. 10.

the FDIC's unopposed motion to dismiss filed at Docket No. 560 be found moot (as a result of the dismissal on mootness grounds discussed above as to the Consolidated Plaintiffs) and that the FDIC's unopposed motion to dismiss, Docket No. 561, be GRANTED as to all Non-Consolidated Plaintiffs.

## IV.    CONCLUSION

In view of the foregoing, I recommend that Oriental Bank's motion to dismiss at Docket Nol. 552 be GRANTED; the FDIC's motion to dismiss at Docket No. 557 be GRANTED; the FDIC's motion to dismiss at Docket No. 560 be deemed MOOT; the FDIC's motion to dismiss at Docket No. 561 be GRANTED; and that FirstBank and Banco Popular's motion for judgment on the pleadings at Docket No. 551 be DENIED. Should the undersigned's recommendations be adopted, all claims set forth by Consolidated Plaintiffs and Non-Consolidated Plaintiffs shall be dismissed, and the foreclosure actions are to be litigated in state courts.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within 14 days**. Failure to file timely and specific objections is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico this 27th day of February, 2026.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE